In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 20-1383

WILLIAM JONES,

*Plaintiff-Appellant,*

*v.*

JAY VAN LANEN and ANDREW WICKMAN,

*Defendants-Appellees.*

_____

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:18-cv-01866 — **William C. Griesbach**, *Judge.*

_____

ARGUED SEPTEMBER 15, 2021 — DECIDED MARCH 7, 2022

_____

Before BRENNAN, SCUDDER, and ST. EVE, *Circuit Judges.*

SCUDDER, *Circuit Judge.* Wisconsin inmate William Jones sued two prison officials contending they violated his constitutional rights by retaliating against him for filing grievances and denying him access to courts. The district court determined that Jones had not identified facts that would allow judgment in his favor on either claim. While we agree with the district court's entry of summary judgment for the defendants on the access to courts claim, we conclude that Jones

identified enough facts—when viewed, as they must be at this stage of litigation, in his favor—to get part of his remaining retaliation claim to trial. So we affirm in part and reverse in part.

**I**

A

On the morning of April 4, 2018, Captain Jay Van Lanen of the Green Bay Correctional Institution sought to escort inmate Raynard Jackson to a scheduled high school equivalency exam. Jackson reacted strangely and refused to leave his cell, even though he had previously expressed substantial interest in taking the exam. In witnessing this reaction, Captain Van Lanen also saw what appeared to be contraband in Jackson's cell and ordered a search. Officer Joshua Gomm performed the search and found several prohibited items, including bottles of unknown liquids, a damaged hair pick, and (most notably for our purposes) a large stack of documents containing the names and health information of other inmates. Because prisoners are generally prohibited from possessing other inmates' medical information, Captain Van Lanen instructed Officer Gomm to confiscate the records.

Some of the seized documents belonged to fellow inmate William Jones. Jackson had the records as part of his work as a jailhouse lawyer: he was helping Jones prepare a lawsuit against Captain Van Lanen and others at the facility. Jones intended to bring claims alleging that the prison officials violated his rights under the Eighth, Fourteenth, and First Amendments, respectively, by subjecting him to inhumane prison conditions, assigning him to a restrictive housing unit

without due process, and denying him access to the Qur'an and Islamic worship services.

Upon learning that guards removed his paperwork from Jackson's cell, Jones sought to get it back, claiming the documents amounted to privileged and confidential legal materials. Prison officials denied each request. Jones also approached Captain Van Lanen and asked why Jackson was not allowed to have the documents. By Jones's account, Captain Van Lanen did not take well to the question and indeed reacted by saying he would not return the records: "Everything is against the law and legal work to you guys, and I went through your stuff and it is contraband now and you won't get to use it to sue me with!" According to Jones, Captain Van Lanen then added that he planned to speak to Captain Andrew Wickman, the officer who would preside over Jackson's disciplinary hearing, to "make sure he knows it's contraband."

At Jackson's disciplinary hearing, Captain Van Lanen stood by his prior account, testifying that the documents removed from Jackson's cell were contraband and not legal materials. Jones, too, testified but offered a contrary account, explaining that he provided medical records to Jackson as part of requesting legal assistance. For his part, Jackson declined to support Jones's version of events, perhaps wanting to avoid being pulled into the dispute. In the end, Captain Wickman found that much of the confiscated paperwork consisted not of legal materials but rather other inmates' medical records. With the records therefore constituting contraband under prison policy, Captain Wickman ordered the lion's share of them destroyed.

In May 2018, following the conclusion of the administrative proceedings within the Green Bay prison, Jones invoked 42 U.S.C. § 1983 and filed suit in federal court against Captain Van Lanen and Captain Wickman. His complaint alleged that both defendants violated the First Amendment by confiscating and destroying the documents from Jackson's cell as part of an effort to get even with Jones for filing so many administrative grievances and otherwise taking steps to sue Captain Van Lanen. Jones further alleged that the document destruction violated his constitutional rights in another way—by depriving him of his right to access the courts.

Jones's claim survived initial screening under 28 U.S.C. § 1915A(a), and the case proceeded to discovery. In time both sides moved for summary judgment.

B

The district court granted the defendants' motion and entered judgment against Jones. As the district court saw it, Jones's retaliation claim fell short because he could not point to facts permitting a finding that either Captain Van Lanen or Captain Wickman took any action in response to the threat of litigation. To the contrary, the district court viewed the evidence in the summary judgment record as only supporting a finding that both defendants had a legitimate and a non-retaliatory reason—enforcing the prison's contraband policy—for confiscating the documents found in Jackson's cell.

As for the access to courts claim, the district court concluded that Jones could not demonstrate he had suffered any harm. He could not show, the district court reasoned, that he needed any of the documents to file suit or, similarly, that he was unable to proceed with litigation and later request the

confiscated medical records in discovery. Without Jones taking either step, the district court concluded that no reasonable jury could find that the destruction of the documents confiscated from Jackson's cell caused Jones any harm and, by extension, prevented any access to court. So on this claim, too, the district court entered summary judgment for the defendants.

Jones now appeals.

## II

### A

We begin with Jones's First Amendment retaliation claim. Everyone agrees on what the claim requires—evidence sufficient to allow a reasonable jury to conclude Jones "engaged in protected First Amendment activity, suffered a deprivation that would likely deter future First Amendment activity, and the First Amendment activity was a motivating factor in the defendant's decision to take the retaliatory action." *Walker v. Groot*, 867 F.3d 799, 803 (7th Cir. 2017). The parties likewise agree that the First Amendment protects acts taken to prepare for litigation, such as drafting a complaint. See *Hobgood v. Illinois Gaming Bd.*, 731 F.3d 635, 642–43 (7th Cir. 2013). What Jones's claim turns on, then, is whether the evidence in the summary judgment record, when viewed in the light most favorable to Jones, allowed a finding that Captain Van Lanen's and Captain Wickman's actions were motivated by the threatened litigation.

We begin with the retaliation claim against Captain Van Lanen. In places in his briefs and verified complaint, Jones suggests that the many grievances he filed put Captain Van Lanen on notice of a potential lawsuit against him. This

reality, Jones continues, shows that Captain Van Lanen had a motive to retaliate by seizing the documents from inmate Jackson and thereby lessening the chance of any complaint against him ever hitting a court's docket.

Without more, these facts—even when viewed in the light most favorable to Jones—are not enough to survive summary judgment on a First Amendment retaliation claim. See *Devbrow v. Gallegos*, 735 F.3d 584, 587 (7th Cir. 2013) (concluding that a prisoner's verified complaint that provided only "speculation regarding the officers' motive" for destroying his legal documents could not survive summary judgment on a First Amendment retaliation claim). To conclude otherwise would risk countenancing the inference that every prison official on the receiving end of a grievance harbors a retaliatory motive against a complaining inmate. We know of no authority permitting such a sweeping finding, at least not at the level of generality at which Jones presses the point.

But Jones's claim against Captain Van Lanen rests on more. Buried within the thousand pages of submitted evidence are sworn declarations from two Green Bay inmates corroborating Jones's account of the retaliatory statements made by Captain Van Lanen. Inmate Michael Johnson stated that during the events in question, he overheard Captain Van Lanen say to inmate Raynard Jackson that he planned to speak with Captain Wickman to make sure he "knows that [the documents confiscated from Jackson's cell were] contraband." Johnson added that he heard Captain Van Lanen then tell Jones, "You can't sue me now." A second inmate, Arnell Gilmer, submitted a similar declaration swearing to being present and having heard Captain Van Lanen make the same statements.

This is enough. If a jury credited the testimony of these two inmates, Jones would have enough evidence to permit a verdict in his favor on the retaliation claim against Captain Van Lanen. Rule 56 does not require more to survive a motion for summary judgment. See *Nat'l Am. Ins. Co. v. Artisan & Truckers Cas. Co.*, 796 F.3d 717, 722 (7th Cir. 2015) (explaining that summary judgment is improper where a fact "affecting the outcome of the case" is in dispute).

Despite the declarations from inmates Johnson and Gilmer, Captain Van Lanen urges a different view. He highlights that, contrary to the claims made in his verified complaint, Jones testified during his deposition that he no longer remembered exactly what Captain Van Lanen or Captain Wickman said to him during their interactions. All Jones was able to say was that he could not recall "verbatim what he said, but [it was] pretty much that I am not getting them back, that they're contraband now and I'm not getting them back."

We do not see Jones's deposition testimony as a barrier to getting to trial. No doubt Captain Van Lanen will be able to use the testimony to impeach any different account Jones offers at trial. But Jones's deposition testimony does nothing to affect the independent, sworn declarations of inmates Michael Johnson and Arnell Gilmer. Those declarations corroborate Jones's contention that Captain Van Lanen ordered the documents confiscated in retaliation for the threat of litigation. How all of this plays out at trial—what the jury chooses to believe and disbelieve—is a separate issue. All we need conclude is that Jones has identified enough evidence to create a material dispute for a jury to resolve.

The analysis of the retaliation claim against Captain Wickman is more difficult. The two inmate declarations that save

Jones's claim against Captain Van Lanen do not directly substantiate Jones's allegations against Captain Wickman. All that inmates Johnson and Gilmer were able to convey was that Captain Van Lanen stated that he planned to let Captain Wickman know the seized documents were contraband.

This falls short. Yes, Jones alleged in his verified complaint that, a few days after inmate Raynard Jackson's disciplinary hearing, he approached Captain Wickman to question why he ordered the materials destroyed. The discussion did not go well, with Captain Wickman allegedly saying, "Captain Van Lanen is a good man and I'm not going to let y'all cost him his livelihood with frivolous lawsuits." And, yes, the law allows verified complaints—containing not just allegations but sworn statements of fact—to serve as evidence for purposes of summary judgment. See *Ford v. Wilson*, 90 F.3d 245, 246–47 (7th Cir. 1996); see also 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1339 (4th ed. 2021) ("[A] verified pleading may be treated as an affidavit and used in the action in any way in which an affidavit would be suitable, such as in the context of evaluating a summary judgment motion.").

The remainder of the summary judgment record is not so clear, though. When it came time for his deposition testimony Jones stated that he could not "remember exactly" what Captain Wickman said to him. Jones went no further. Unlike the account in his verified complaint, he did not testify that Captain Wickman said anything suggesting the outcome of the disciplinary hearing was preordained to shield Captain Van Lanen from a lawsuit.

For his part, Captain Wickman testified that following the disciplinary hearing, he went to inmate Jackson's cell to try to

ascertain for certain whether the seized documents constituted legal materials (that Jackson could have as part of offering legal assistance to other inmates) or instead contraband. He explained that he asked Jackson for some indication—a court filing, a case number, or anything else showing that the documents were legal materials—but that Jackson offered nothing to clarify the situation. Jackson's failure to support Jones's account, Captain Wickman added, contributed to his ultimate finding in the disciplinary hearing that the confiscated records constituted contraband.

On this record—with no evidence more closely linking Captain Wickman's decisionmaking in the disciplinary proceeding with facts showing some influence by Captain Van Lanen—Jones has not done enough to create a jury question on his claim against Captain Wickman. His verified complaint, especially when considered in light of his deposition testimony, cannot carry his claim to trial when we see nothing else in the record to allow a jury to find that Captain Wickman's ultimate decision reflected unconstitutional retaliation against Jones for his desire to file a lawsuit against Captain Van Lanen. To allow otherwise would relieve Jones of his burden at summary judgment. See *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1032 (7th Cir. 2019) (explaining that "summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial") (cleaned up).

In reaching this conclusion, we recognize full well that circumstantial evidence may be enough to survive summary judgment if that evidence could allow a jury to draw a reasonable inference in support of the non-moving party. See

*Boyd v. Wexler*, 275 F.3d 642, 645 (7th Cir. 2001) (acknowledging that "[c]ircumstantial evidence can create an issue of credibility"); *LaBrec v. Walker*, 948 F.3d 836, 846 (7th Cir. 2020) (reinforcing that evidence that would "allow a jury to infer that [certain] circumstances" exist can be enough for a claim to proceed to trial); *Abdullahi v. City of Madison*, 423 F.3d 763, 772 (7th Cir. 2005) (allowing a case to survive summary judgment because, despite only presenting circumstantial evidence, the plaintiff was not "asking the finder of fact to *speculate*" but was asking only that the fact finder "*infer* causation, logically, from undisputed facts and competent evidence") (emphasis in original).

In the end, however, Jones invites an inference against Captain Wickman that veers too far into speculation to survive summary judgment. He sees an available finding of retaliatory motivation largely from the situational relationships of prison officials—from the perspective that one officer (Captain Van Lanen) would be able to do something behind the scenes to influence an ultimate decisionmaker (like a warden or, here, Captain Wickman) in ways that result in a violation of an inmate's rights. We do not foreclose that such an inference might be possible on a particular evidentiary record. But having rolled up our sleeves and combed the summary judgment record, we do not see evidence permitting a finding that Captain Wickman's determination that the confiscated documents were contraband reflected retaliatory bias.

Accordingly, the district court erred when it granted summary judgment for Captain Van Lanen but not for Captain Wickman on Jones's First Amendment retaliation claim.

B

That brings us to Jones's access to courts claim. He contends that Captain Van Lanen and Captain Wickman denied him meaningful access to the courts on his underlying claims by destroying his legal materials. We see the evidence in a different way.

The right to access the court is fundamental and essential to prisoners' ability to vindicate legal rights. See *Lewis v. Casey*, 518 U.S. 343, 346 (1996) (evaluating the "fundamental constitutional right of access to the courts") (quoting *Bounds v. Smith*, 430 U.S. 817, 828 (1977)). "Without this right," we have emphasized, "all other rights a prisoner may possess are illusory." *Corgain v. Miller*, 708 F.2d 1241, 1247 (7th Cir. 1983).

To prove the claim, Jones must submit evidence identifying "(1) a non-frivolous, underlying claim; (2) the official acts frustrating the litigation; and (3) a remedy that may be awarded as recompense but that is not otherwise available in a suit or settlement." *Harer v. Casey*, 962 F.3d 299, 308 (7th Cir. 2020) (citing *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)).

The second element poses a hurdle Jones cannot clear. By its terms, that element requires Jones to make some showing that Captain Van Lanen or Captain Wickman did something to adversely affect—to frustrate—his effort to vindicate his rights through litigation. See *Ortloff v. United States*, 335 F.3d 652, 656 (7th Cir. 2003) (making this same observation in the context of affirming a dismissal of a prisoner's access to courts claim based on allegations that prison officials destroyed documents relating to pending lawsuits), abrogated on other grounds by *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214 (2008). Speculation is insufficient.

On at least one prior occasion, and drawing upon the Supreme Court's analysis in *Lewis v. Casey*, 518 U.S. 343 (1996), we have referred to this second element along the lines of the injury component of standing doctrine. See, *e.g.*, *Bridges v. Gilbert*, 557 F.3d 541, 553–54 (7th Cir. 2009). Whether viewed as a matter of standing or merits—a question of some complexity—we end up at the same point. The district court properly dismissed Jones's claim.

Jones insists that Captain Van Lanen and Captain Wickman "unconstitutionally frustrated and impeded his nonfrivolous claims" by confiscating and destroying his legal documents. These actions, he urges, hindered his litigation prospects, weakened the settlement potential of his claims by destroying evidence, and interfered with inmate-to-inmate legal assistance.

Even viewing the record in the light most favorable to Jones, we cannot get there. Jones overstates what findings the record reasonably permits. Right to it, we see nothing that would allow a jury to conclude the confiscation and destruction of Jones's documents created any meaningful impediment to the three claims Jones sought to bring to court. Jones has personal knowledge that could support each of his underlying claims:

- *Conditions of confinement claim*: Having experienced the conditions firsthand, Jones could describe them in a pleading, testify about them, and use discovery to obtain corroboration from fellow inmates.

- *Unfair process claim*: Jones has firsthand knowledge about the process he received

(and did not receive) before being placed in the restrictive housing unit. We do not see how any aspect of pleading or litigating this claim would be hampered by Jones no longer having access to any of the destroyed documents.

- *First Amendment Free Exercise claim*: Here, too, Jones would be able to explain how he allegedly repeatedly requested but was denied access to religious services and a copy of the Qur'an. And he could use the discovery process to seek copies of the written requests that he contends went ignored by prison officials.

In no way does our analysis establish a filing requirement for plaintiffs with an access to courts claim. The Supreme Court has rejected such a prerequisite, and we too have underscored the same point. See *Lewis*, 518 U.S. at 351–53 (describing how a plaintiff may establish standing by showing, for example, that inadequate prison law library facilities made it impossible to file a complaint); *Harer*, 962 F.3d at 310 n.2 ("To be clear, we do not hold 'that a filed suit on the underlying claim is a prerequisite for a backward-looking access claim.'") (quoting *Christopher*, 536 U.S. at 416 n.14).

In some cases, the denial of access to courts might make filing an underlying claim an impossibility. See, *e.g.*, *Jackson v. Procunier*, 789 F.2d 307, 310–11 (5th Cir. 1986) (finding that a prisoner was unable to file his underlying complaint because prison mailroom officials intentionally delayed his petition to proceed in forma pauperis). But a plaintiff must show more than just some minimal degree of impediment in filing claims.

Jones has not established that either defendant took steps imposing any meaningful impediment to his underlying claims. The district court was right to enter judgment for the defendants on this claim.

### III

Jones has benefited immensely from the very able assistance of appointed counsel on appeal. Counsel diligently scoured the record presented to the district court and pinpointed facts showing that Jones did enough at summary judgment to get his retaliation claim to trial against Captain Van Lanen.

*        *        *

For these reasons, we AFFIRM in part and REVERSE in part.