NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with FED. R. APP. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 4, 2022[*]
Decided April 28, 2022

**Before**

WILLIAM J. BAUER, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

THOMAS L. KIRSCH II, *Circuit Judge*

No. 21-2594

| | |
|---|---|
| JERMAINE J. DAVIS, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Central District of Illinois. |
| *v.* | No. 15-CV-3185 |
| STEPHEN D. DAHLKAMP, et al., *Defendant-Appellant*. | Sue E. Myerscough, *Judge*. |

**O R D E R**

Jermaine Davis was interrogated by local police about two murders and detained at the county jail. He later brought this suit under 42 U.S.C. § 1983 against three detectives whom he accuses of violating his constitutional rights in connection with the interrogation and detention. The parties cross-moved for summary judgment, both asserting that the circumstances of these events supported a ruling in their favor. As relevant for this appeal,

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

the district court determined that the defendants were not entitled to summary judgment on their qualified immunity defense. We reverse the district court's judgment and remand so that summary judgment can be entered for the defendants.

We recount the facts and reasonable inferences in Davis's favor except where video evidence is definitive. *See Ferguson v. McDonough*, 13 F.4th 574, 580 (7th Cir. 2021). On February 7, 2014, two detectives with the City of Springfield Police Department—Stephen Dahlkamp and Ryan Sims—questioned Davis in relation to a double murder. Davis, who was on supervised release for a felony offense, drove himself to the police station. When he arrived, Sims told him that he was not under arrest but nevertheless read him his *Miranda* rights. *See People v. Davis*, 2019 Ill. App. (4th) 17031-U, 2019 WL 4954985, *6 (Oct. 4, 2019). The interview was video recorded. During questioning, Dahlkamp and Sims allowed Davis food, cigarette breaks, and the use of his cell phone to send a text message. *Id.* at *9. An hour into questioning, Davis admitted both to purchasing a gun and to selling a gun to another individual whom the detectives suspected that Davis had committed the murder with. Detectives questioned Davis for several more hours and then arrested him for illegally possessing a firearm as a felon. *Id.* at *6, *14.

The detectives had Davis detained at the Sangamon County Jail. A third detective, Richard VonBehren, believing Davis to be one of two murder suspects, requested restrictions to Davis's phone access in jail to prevent him from contacting his accomplice.

The next day, February 8, Dahlkamp and Sims brought Davis back to the police station for further questioning about the murders. At the interview's outset, they reminded Davis that his *Miranda* rights still applied. He acknowledged as much, saying: "[y]eah, I can stop talking whenever I choose to." *Id.* at *15. About three hours into questioning, Davis said "[t]here's no reason for us to talk anymore," "take me back to my cell now," and "I'm done talking." *Id.* at *16. Before ending the questioning, Sims and Dahlkamp told Davis that physical evidence implicated him in the murders. Davis denied the accusation, saying he left the scene before the murders took place. *Id.* at *16–17. He was then returned to jail.

Two days later, on February 10, Dahlkamp and Sims questioned Davis for a third time, this time at the jail. They again read Davis his *Miranda* rights, and this time he confessed to committing the double murder with an accomplice. He was charged with the murders (the weapons charge was dropped). Davis says that his phone restrictions in jail were then lifted.

At his trial in state court, Davis moved to suppress his confession on grounds that he had invoked his right to silence on February 7. The court determined, however, that Davis had not adequately invoked his right that day and denied the motion. *Id.* at *6. A jury then convicted him of two counts of first-degree murder and two counts of armed robbery, for which he is serving life in prison plus 30 years. *Id.* at *6–7.

Meanwhile, Davis had filed this suit under 42 U.S.C. § 1983 for constitutional violations based on his arrest, interrogation, and detention. He alleged that Sims and Dahlkamp arrested him without probable cause on February 7, and that the two men interrogated him after he invoked his right to silence on February 7, 8, and 10. He also alleged that between February 7 and 10, VonBehren restricted his phone access in jail to induce him to confess to the murders. The district court stayed the suit while the criminal proceedings were ongoing. *See Simpson v. Rowan*, 73 F.3d 134, 138 (7th Cir. 1995) (citing *Younger v. Harris*, 401 U.S. 37 (1971)).

The Illinois Appellate Court affirmed Davis's conviction. It pointed out that the trial court "improperly admitted evidence" from February 7 and 8 because Davis had invoked his right to remain silent on the first day and arguably so on the next. *People v. Davis*, 2019 WL 4954985 at *49–50. But the court found the error harmless because Davis's properly obtained confession on February 10, coupled with other evidence, "overwhelmingly" supported his conviction. *Id.* at *17.

After entry of judgment in Davis's criminal appeal, the district court lifted the stay on his § 1983 case. Both parties then moved for summary judgment. The detectives raised the defense of qualified immunity, arguing that the criminal appeal had settled all material disputes of facts and that *Heck v. Humphrey*, 512 U.S. 477 (1994), barred the appeal as a collateral attack on Davis's conviction.

As relevant here, the district court denied in part the defendants' motion for summary judgment, ruling that they were not entitled to qualified immunity on Davis's federal statutory and constitutional claims, but that *Heck* did not bar Fourth Amendment claims. The court explained that Davis and the detectives offered competing accounts of the circumstances surrounding the arrest, interrogation, and telephone access, and that disputed facts remained over whether Davis admitted possessing weapons as a felon before being taken into custody on February 7, whether Davis adequately invoked his right to silence on February 8, and whether Davis's phone access was restricted to induce a confession.

The defendants challenge the district court's qualified immunity ruling. They maintain that the district failed to adopt the Illinois Appellate Court's factual findings, which, they assert, settled all material disputes regarding Davis's claims. According to Dahlkamp and Sims, the undisputed facts establish that they had probable cause to arrest Davis on February 7, and that Davis did not unambiguously invoke his right to silence on February 8. And VonBehren argues that his request for restrictions to Davis's phone access in jail between February 7 and 10 was reasonable.

We pause at the outset to assess our jurisdiction. The denial of summary judgment ordinarily does not constitute an appealable final order under 28 U.S.C. § 1291. But the collateral-order doctrine affords an exception for a denial of qualified immunity, *see Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985), provided we can evaluate the denial on purely legal grounds. *Johnson. v. Jones*, 515 U.S. 304, 319–20 (1995); *Ferguson*, 13 F.4th at 580. Our limited collateral-order jurisdiction does not extend to the resolution of material factual disputes, which are reserved for a jury. *See Lovelace v. Gibson*, 21 F.4th 481, 487 (7th Cir. 2021). A "narrow, pragmatic exception" to this rule exists, however, where—as here—video of the disputed incidents exists and contains "irrefutable facts." *Ferguson*, 13 F.4th at 580–81 (citations omitted). In such a case, the officers are entitled to qualified immunity unless the plaintiff can show that they violated "clearly established law." *Gaddis v. DeMattei*, --- F.4th ----, 2022 WL 986440, at *4 (7th Cir. 2022).

The district court erred by denying qualified immunity to Dahlkamp and Sims for arresting Davis on February 7 and interrogating him the next day. Regarding the February 7 arrest, the court ruled that fact issues remained for a jury because the detectives failed to explain "what facts led them to believe on February 7 that [Davis] was in immediate and exclusive control of a weapon." But that finding is at odds with the opinion of the Illinois Appellate Court, which found that Davis admitted to a crime—possession of a firearm by a felon—an hour into questioning, before he was in custody, and 30 minutes before he invoked his right to remain silent. *See People v. Davis*, 2019 WL 4954985 at *6–7, *36. Davis was precluded from relitigating that issue, which was necessary to the Illinois Appellate Court's judgment. *See Wells v. Coker*, 707 F.3d 756, 761 (7th Cir. 2013).

The district court likewise erred by denying qualified immunity to Dahlkamp and Sims for interrogating Davis on February 8. The Illinois Appellate Court made no findings about whether he adequately invoked his right to silence that day. *See People v. Davis*, 2019 WL 4954985 at *46–47. But the video shows that Davis repeatedly responded to the detectives' comments, and by doing so "engaged in a course of conduct indicating

waiver" of his right to remain silent. *Berghuis v. Thompkins*, 560 U.S. 370, 371–72 (2010). The video does not reflect that the detectives asked Davis further questions after he said "[t]here's no reason for us to talk anymore," "take me back to my cell now," and "I'm done talking." *People v. Davis*, 2019 WL 4954985 at *16. *See also United States v. Montgomery*, 555 F.3d 623, 634 (7th Cir. 2009) (officers "misstep[ped]" but did not violate defendant's right to remain silent by "outlin[ing] the evidence" several hours after he had invoked his right to silence and the police ceased questioning him). They then waited two days and re-*Mirandized* Davis before they resumed questioning on February 10. Further, the Illinois Appellate Court determined that, irrespective of any violations on February 7 or 8, Davis's statements on February 10 alone sufficed to convict him. *See People v. Davis*, 2019 WL 4954985 at *51.

Finally, the district court erred by denying qualified immunity to VonBehren for restricting Davis's phone access in jail. The court reasoned that the "slim record" did not permit a ruling on Davis's First Amendment claim because VonBehren failed to address the availability of "ready alternatives," such as monitoring Davis's phone calls. But Davis introduced nothing to overcome VonBehren's evidence that the phone restrictions were triggered by concerns about communications with coconspirators. VonBehren asserted in an affidavit that "the purpose of the restriction was to prevent Davis from getting a message to … another participant in the murders with which Davis was being charged." Davis's speculation that VonBehren acted "behind the scenes" to influence prison officials to violate his constitutional rights is too speculative to survive summary judgment. *Jones v. Van Lanen*, 27 F.4th 1280, 1287 (7th Cir. 2022).

We REVERSE the district court's denial of qualified immunity to Dahlkamp, Sims, and VonBehren, and we REMAND for entry of summary judgment in their favor.