In the

# United States Court of Appeals

## For the Seventh Circuit

─────────────

No. 22-1609

HELEN FRAZIER-HILL,

*Plaintiff-Appellant,*

*v.*

CHICAGO TRANSIT AUTHORITY and GEORGETTE HAMPTON,

*Defendants-Appellees.*

─────────────

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:18-cv-3544 — **Steven C. Seeger**, *Judge.*

─────────────

ARGUED JANUARY 18, 2023 — DECIDED AUGUST 2, 2023

─────────────

Before HAMILTON, JACKSON-AKIWUMI, and LEE, *Circuit Judges.*

LEE, *Circuit Judge.* Helen Frazier-Hill was terminated from her employment as a bus driver for the Chicago Transit Authority ("CTA") in September 2020. She sued the CTA, alleging that it failed to provide her a reasonable accommodation in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"). Specifically, she claims that the CTA should have allowed her to drive only standard, non-

articulated buses due to certain maladies caused by her carpal tunnel syndrome. The parties filed cross-motions for summary judgment, and the district court granted summary judgment in favor of the CTA. Because no reasonable jury could find based on this record that Frazier-Hill was disabled within the meaning of the ADA, we affirm.[1]

## I.    BACKGROUND

Frazier-Hill was hired as a part-time bus driver for the CTA in 1998 until she transitioned to a full-time role in 2000. As many Chicagoans know, the CTA's bus fleet consists of two main types of buses: 40-foot standard buses and 60-foot articulated buses. The longer, articulated buses are those that have two cabins with a pivoting joint connecting them in the middle, like an accordion. Or, to borrow the district court's explanation, these buses "bend in the middle, like a straw." *Frazier-Hill v. Chi. Transit Auth.*, No. 18-cv-3544, 2022 WL 787970, at *1 (N.D. Ill. Mar. 15, 2022). The two bus types have the same steering wheel size and driver's seat, as well as various controls, save minor variations based on manufacturer. And in both bus types, the driver can adjust the height and angle of the steering wheel as needed. During her tenure as a bus driver, Frazier-Hill operated both standard and articulated buses.

---

[1] Frazier-Hill also sued Georgette Hampton, the CTA's Senior Manager of Human Resources Benefit Services and Chairperson of the Accommodation Review Committee, in her individual capacity pursuant to 42 U.S.C. § 1983, alleging that Hampton violated her Fourteenth Amendment right to equal protection by denying her an accommodation. The district court granted summary judgment in favor of Hampton on this claim, a decision that Frazier-Hill does not appeal.

In 2013, Frazier-Hill injured her wrists when she tripped and fell while on duty. She was diagnosed with bilateral carpal tunnel syndrome. As described by the district court, "[c]arpal tunnel syndrome occurs when the median nerve, housed in the carpal tunnel and running from the forearm into the palm of the hand, becomes pressed or squeezed at the wrist." *Frazier-Hill*, 2022 WL 787970, at *3. "As a result, carpal tunnel can cause numbness, weakness, and pain in the hand and wrist." *Id.*

While she recovered from her injury, the CTA placed Frazier-Hill in its Transitional Return to Work ("TRTW") program.[2] And, in November 2014, after nearly a year in the program, Frazier-Hill was cleared to resume her ordinary job responsibilities. Upon her return, she operated standard buses about 80% of the time, and articulated buses about 20% of the time.

Unfortunately, on April 12, 2016, Frazier-Hill aggravated her wrist injury. She went to her physician, Dr. Alfonso Mejia, and complained of right-hand burning and left-hand numbness and tingling. Dr. Mejia determined that these were likely recurrent symptoms of bilateral carpal tunnel syndrome and recommended that Frazier-Hill take a couple weeks off to rest her wrists. Two weeks later, Frazier-Hill was seen by an occupational therapist who reported that Frazier-Hill was having

---

[2] The TRTW program allows employees injured on duty to work less than their full-duty assignment for a limited period of time, with the goal of returning to a full-duty assignment as soon as possible. The program is temporary in nature and is not available for employees who are permanently prevented from returning to their full-time position due to injury.

difficulty "using the computer, writing, carrying/lifting > 10 lbs, sleeping and driving."

Frazier-Hill came to believe that driving articulated buses aggravated her carpal tunnel, and over the course of the next three years, she would submit six requests seeking an accommodation to drive only standard, non-articulated buses. Because the parties dispute the relevance of some of these requests, we briefly discuss the circumstances of each.

## A. First and Second Accommodation Requests

On May 7, 2016, while still on leave, Frazier-Hill requested that she not be required to drive articulated buses and submitted a medical note from Dr. Mejia stating that she was temporarily disabled until June 6, 2016, due to carpal tunnel syndrome. In the note, Dr. Mejia indicated that Frazier-Hill could return to work on June 6 only if she was not required to drive articulated buses.

The CTA reviewed Frazier-Hill's request in various meetings spanning June to October 2016. During this time, the CTA sought, among other things, additional statements from Dr. Mejia to substantiate the reason for the requested accommodation. In response, Dr. Mejia explained that his recommendation that Frazier-Hill avoid articulated buses was based on her own statements that driving those buses put more stress on her hands. The CTA's Bus Training and Instruction Department, however, came to a different conclusion. It determined that a driver experienced no difference when driving an articulated bus versus any other bus model.

On September 20, 2016, while the CTA was still reviewing her first request, Frazier-Hill submitted a second request that she not drive articulated buses. Enclosed with this request

was a September 15, 2016, orthopedic report from Dr. Mejia stating that Frazier-Hill's carpal tunnel was "not very symptomatic" when she was not working, but that Frazier-Hill was "concerned [that left hand numbness] may flare with increased activity such as at work."

On October 28, 2016, the CTA denied Frazier-Hill's May 2016 request. Based in part on the Bus Training and Instruction Department's findings, the CTA concluded that the "medical documentation submitted [did] not substantiate" Frazier-Hill's requested accommodation. The record is unclear as to what came of Frazier-Hill's September 2016 request, but—given what happened next—it is safe to assume that it too was denied.

## B. Frazier-Hill's Return to Work and Surgery

Frazier-Hill returned to work without any accommodation in November 2016. Over the next ten months, using her near-twenty-year seniority with the CTA, Frazier-Hill opted exclusively for routes that required the operation of only standard, 40-foot buses.

In September 2017, Frazier-Hill stopped working to undergo carpal tunnel release and trigger thumb release surgery. The surgery was successful, and Frazier-Hill remained on leave to recuperate.

While she was recovering, Frazier-Hill was designated to the CTA's "Area 605" in December 2017. Area 605 is an employment leave status for union employees who have been deemed medically unfit to perform the essential functions of their positions due to injury or illness. Generally, an employee can only remain in Area 605 for up to two years but may receive a one-year extension with supporting medical

documentation. To return to work from Area 605, an employee must, among other things, provide medical documentation that she can perform her regular duties without any restrictions. If an employee in Area 605 believes that a reasonable accommodation would allow her to resume work, she can request one.

## C. Third and Fourth Accommodation Requests

Eager to get back behind the wheel, Frazier-Hill obtained a medical report stating that she could return to work on January 15, 2018, so long as she did not operate articulated buses. She submitted this report with her third accommodation request, again seeking an accommodation to drive only standard buses. The CTA denied the request on February 26, 2018, noting that it had determined previously that the physical demands of driving an articulated bus were no different than the physical demands of driving any other CTA bus. And so, Frazier-Hill remained in Area 605.

Frazier-Hill tried again in April 2018, submitting her fourth accommodation request to drive only standard buses so she could "continue ear[n]ing a living." She emphasized that she *could* work, so long as that work was limited to operating standard buses. She once more included a note from Dr. Mejia stating that she could return to work with this accommodation.

While the CTA was reviewing this request, Frazier-Hill was evaluated by an occupational therapist. The therapist noted that Frazier-Hill exhibited deficiencies in "end range composite grasping, strength, [and] soft tissue restrictions," which limited her ability to open tight jars, carry a shopping bag, wash her back, or use a knife to cut food.

The CTA denied Frazier-Hill's request for a fourth time on April 30, 2018, listing the same reason as its prior denial.

## D. Fifth and Sixth Accommodation Requests

In 2019, nearing the end of her time in Area 605, Frazier-Hill filed two more accommodation requests—one on July 13, and another on November 21.[3] Each time, the CTA sought additional medical documentation from Dr. Mejia, but received none. Consequently, the CTA closed Frazier-Hill's fifth and sixth requests on October 15, 2019, and on February 12, 2020, respectively, and denied the requested accommodation.

Meanwhile, Frazier-Hill underwent more medical evaluations. In an August 1, 2019, medical report, Dr. Mejia noted that Frazier-Hill's carpal tunnel prevented her from "heavy lifting, strenuous activities, [and] driving articulated buses." Later, on December 17, 2019, Frazier-Hill completed a job-specific functional capacity evaluation which analyzed twenty-one different physical demands, including lifting and reaching. The evaluating physician determined that Frazer-Hill possessed the physical capabilities and tolerances to perform all of the essential functions of the bus operator job. For example, the physician wrote, Frazier-Hill displayed no limitation on her ability to reach forward or overhead, or to grip, and she was able to lift 12.5 pounds, well beyond the job requirement of 10 pounds.

## E. Termination

Frazier-Hill's time in Area 605 expired on September 28, 2020. And, because she lacked medical documentation stating

---

[3] Frazier-Hill obtained a one-year extension in Area 605 on July 19, 2019, allowing her to remain on leave until September 28, 2020.

that she would be able to resume her full-time job responsibilities as a driver of both standard and articulated buses, her employment was terminated.

As relevant here, Frazier-Hill claims that the CTA failed to provide her with a reasonable accommodation in violation of the ADA by refusing to assign her to only standard buses. Following discovery, the parties filed cross-motions for summary judgment, and the district court granted summary judgment in favor of the CTA and against Frazer-Hill, concluding that she had failed to establish that her carpal tunnel syndrome substantially limited a major life activity—that is, that she was "disabled" within the meaning of the ADA—during the events in question. *Frazier-Hill*, 2022 WL 787970, at *17. Frazier-Hill appeals.

## II.    DISCUSSION

Summary judgment is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). We review cross-motions for summary judgment *de novo*, construing all facts and drawing all reasonable inferences in favor of the party against whom the motion under review was made. *Juday v. FCA US LLC*, 57 F.4th 591, 594 (7th Cir. 2023).

To prevail on her failure-to-accommodate claim, Frazier-Hill must show that: "(1) [she] was a qualified individual with a disability; (2) the [CTA] was aware of the disability; and (3) the [CTA] failed to reasonably accommodate the disability." *Conners v. Wilkie*, 984 F.3d 1255, 1260–61 (7th Cir. 2021). The primary question on appeal is whether Frazier-Hill has established that she had a "disability" when the CTA denied her request for accommodation. *See Bay v. Cassens Transp. Co.*,

212 F.3d 969, 974 (7th Cir. 2000) (explaining that whether an employee is a qualified individual with a disability "is to be determined as of the time the employment decision was made").

Before we can reach that issue, however, we must determine which of Frazier-Hill's accommodation requests form the basis of her present claim.

## A. Accommodation Requests

Frazier-Hill submitted requests for an accommodation to drive only standard buses on May 7, 2016; September 20, 2016; January 9, 2018; April 19, 2018; July 13, 2019; and November 21, 2019. There is no dispute that the two 2018 requests are at issue, but the parties disagree as to whether the two 2016 requests and the two 2019 requests remain part of this case. In the end, we, like the district court, conclude that we need only consider the denial of Frazier-Hill's two 2018 requests.

### 1. 2016 Accommodation Requests

On appeal, Frazier-Hill contends that the allegations in the operative complaint adequately raise the CTA's denials of her 2016 requests. But Frazier-Hill did not raise those denials before the district court in response to the CTA's summary judgment motion. Indeed, Frazier-Hill's own representations of the dispute in her summary judgment briefing are limited to the 2018 denials of her requests. She argued, for example, that the CTA's "adverse action is to be determined as of the February 26, 2018, denial of her January 9, 2018, accommodation request," and that it was her January 2018 accommodation request that "triggered" the CTA's liability. By failing to raise any claims based on the 2016 requests when opposing summary judgment, she has waived them. *See Bradley v. Vill. of*

*Univ. Park*, 59 F.4th 887, 897 (7th Cir. 2023); *Hackett v. City of S. Bend*, 956 F.3d 504, 509 (7th Cir. 2020).

### 2. 2019 Accommodation Requests

Frazier-Hill's insistence that we consider the denials of her 2019 accommodation requests is likewise misplaced. She did not include these denials in the operative complaint she filed on December 12, 2020—ten months after her final accommodation request was denied. She then affirmatively disclaimed the 2019 requests at summary judgment, telling the district court that her July 2019 request and subsequent denial were "outside the scope of the complaint, and should not be considered." We see no reasons why her November 2019 request should not be treated in the same fashion.

With this dispute settled, we move to the merits of Frazier-Hill's claim, which arises out of the CTA's denial of her 2018 requests to drive only standard buses.

## B. Failure to Accommodate

As noted, to succeed on her claim, Frazier-Hill must establish that she had a disability when the CTA denied her accommodation requests in 2018. *See Bay*, 212 F.3d at 974. The ADA defines a disability as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Frazier-Hill relies on the first prong, arguing that her bilateral carpal tunnel syndrome (which is undisputedly a physical impairment) substantially limited certain major life activities.

Under the ADA, an employee can establish a substantially limiting impairment by presenting evidence of her relative

inability "to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii). But whether an impairment substantially limits a major life activity is "not meant to be a demanding standard," and "shall be construed broadly in favor of expansive coverage." *Id.* § 1630.2(j)(1)(i). Thus, an impairment "need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." *Richardson v. Chi. Transit Auth.*, 926 F.3d 881, 888–89 (7th Cir. 2019) (quoting 29 C.F.R. § 1630.2(j)(1)(ii)).

The ADA's implementing regulations provide a non-exhaustive list of major life activities, including lifting, reaching, working, and the operation of a major bodily function (such as musculoskeletal functions). 29 C.F.R. § 1630.2(i)(1)(i)–(ii). Here, Frazier-Hill argues that her carpal tunnel syndrome limited her ability to lift and reach.[4]

### 1. Lifting

As Frazier-Hill sees it, the record contains sufficient evidence from which a reasonable jury could find that, when the CTA denied her 2018 accommodation requests, her carpal tunnel syndrome substantially limited her ability to lift.

In support, she points to various medical and physical therapy reports that she had submitted to the CTA in support of her May 7, 2016, accommodation request. One of these reports—an April 26, 2016, occupational therapy report—indicated that Frazier-Hill had difficulty "carrying/lifting > 10

---

[4] Although Frazier-Hill also asserted in the district court that she was substantially limited in the major life activity of "working," she has abandoned that argument on appeal.

lbs." Others reported that, throughout 2016, Frazier-Hill's carpal tunnel syndrome ranged from causing minor symptoms (such as numbness, tingling, and swelling) to being asymptomatic, but unresolved. In Frazier-Hill's view, these reports demonstrate that her carpal tunnel syndrome substantially limited her ability to lift beginning in 2016 through denial of her accommodation requests in 2018. The district court disagreed, noting that a single report of a difficulty lifting in 2016 was "not enough to support a finding by a reasonable jury that Frazier-Hill was disabled in 2018, when the CTA denied her requests." *Frazier-Hill*, 2022 WL 787970, at *15. We agree.

In September 2017, Frazier-Hill underwent carpal tunnel release surgery on her left hand, which she admits improved her carpal tunnel symptoms. Indeed, a medical report from her physician on January 4, 2018—about three months after her operation and five days prior to her first accommodation request of 2018—indicated no work restrictions other than a temporary inability to drive articulated buses. Notably, the doctor declined to check any of the boxes indicating that Frazier-Hill was restricted in, for example, lifting, pushing, walking, bending, carrying, pulling, or stooping. What is more, an April 27, 2018, occupational therapy report also noted no deficits in lifting. No reasonable jury could find from this record that the lifting limitation observed in April 2016 was still present by the time that the CTA denied Frazier-Hill's accommodation requests in 2018. *See Fleishman v. Cont'l Cas. Co.*, 698 F.3d 598, 607 (7th Cir. 2012).

To be sure, under some circumstances, bilateral carpal tunnel syndrome could qualify as an episodic condition or be in remission, in which case a resulting impairment would remain a disability. 42 U.S.C. § 12102(4)(D) ("An impairment

that is episodic or in remission is a disability if it would substantially limit a major life activity when active."). Frazier-Hill believes that this is such a case and points to an August 1, 2019, report from her physician, noting her limited ability to engage in heavy lifting and strenuous activities.

The problem is that, in the district court, Frazier-Hill argued that her health in 2019 was irrelevant to her condition in 2018. Specifically, when the CTA pointed to a December 17, 2019, functional capacity evaluation showing that Frazier-Hill was able to lift 12.5 pounds without pain (which was more than the 10-pound minimum her job requires), she argued that, because the test had been administered nearly 22 months after her first 2018 accommodation request, the report had nothing to say about her status in 2018. The district court agreed. *Frazier-Hill*, 2022 WL 787970, at *15 n.11. Yet now, she urges us to accept a physician's report from only three months earlier to draw the opposite conclusion. Having convinced the district court otherwise, the doctrine of judicial estoppel prevents Frazier-Hill from having it both ways. *See In re Knight-Celotex, LLC*, 695 F.3d 714, 721–22 (7th Cir. 2012).[5]

---

[5] Even if the doctrine of judicial estoppel were not to apply, Frazier-Hill has waived her ability to rely on the August 1, 2019, report to show an inability to lift by failing to fully develop this argument in the district court. *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012). Frazier-Hill's summary judgment briefing merely states that "[m]edical reports prepared by [her] doctor between April 12, 2016, to August 1, 2019, consistently show that she suffered from bilateral carpal tunnel syndrome and that she has been treated multiple times." This statement indicates only that she had carpal tunnel syndrome (which is undisputed); it says nothing of her ability to lift. We see no other reliance on the August 1, 2019, report's lifting limitation in her summary judgment briefing.

Frazier-Hill also argues that an April 2018 occupational therapy report indicating her limited ability to carry a shopping bag should be construed broadly as a limitation on her ability to lift. She argues that carrying a shopping bag necessarily involves lifting it. But the report deals specifically with grip strength, not the ability to lift. Indeed, the physician's assessment expressly noted changes in Frazier-Hill's grip strength—that her right hand had slightly improved, but her left hand had slightly decreased—and was silent as to Frazier-Hill's ability to lift. Thus, the district court correctly concluded that the 2018 occupational therapy report did not support a limitation on lifting.

In short, the record is devoid of any evidence from which a reasonable jury could find that, at the time the CTA denied her accommodation requests in 2018, Frazier-Hill was substantially limited in the major life activity of lifting.

### 2. Reaching

Frazier-Hill also challenges the district court's determination that there was insufficient evidence to support her claim that her carpal tunnel syndrome substantially restricted her ability to reach. The district court quickly disposed of this argument, explaining that Frazier-Hill had failed to cite any evidence of such a limitation. *Frazier-Hill*, 2022 WL 787970, at *14.

On appeal, Frazier-Hill points again to the April 2018 occupational therapy report indicating that she had trouble washing her back, which she argues involves reaching around her body with a brush or washcloth. Citing Merriam-Webster's definition of "reaching," she also argues that "reaching" involves "grasping," and since the district court

acknowledged possible deficits in grip strength, she was necessarily limited in her ability to reach. Whatever the strength of these arguments, Frazier-Hill failed to raise them before the district court, and she cannot rely on them now. *Bradley*, 59 F.4th at 897.[6]

### III.    CONCLUSION

For these reasons, we conclude that no reasonable jury could find on this record that Frazier-Hill was substantially limited in a major life activity when the CTA denied her 2018 requests for accommodation. We therefore agree with the district court that Frazier-Hill failed to establish that she qualified as disabled under the ADA. Because the existence of a disability is a prerequisite to the success of Frazier-Hill's failure-to-accommodate claim, we need not address any remaining arguments as to the reasonableness of Frazier-Hill's requested accommodation or the CTA's alleged failure to engage in the interactive process.

AFFIRMED.

---

[6] The scope of our review today is limited by the record before us. But we reiterate that whether an employee's impairment renders her disabled is not meant to be a "demanding standard." 29 C.F.R. § 1630.2(j)(1)(i). Had Frazier-Hill argued below that her carpal tunnel substantially limited her ability to grip—a musculoskeletal function—the outcome may have been different. But it is not the job of the district court to sift through the record and identify the best argument for her. *United States v. 5443 Suffield Terrace*, 607 F.3d 504, 510 (7th Cir. 2010).