In the

# United States Court of Appeals

## For the Seventh Circuit

No. 24-3163

ALARM DETECTION SYSTEMS, INC., *et al.*,

*Plaintiffs-Appellants*,

*v.*

VILLAGE OF SCHAUMBURG,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 17-C-2153 — **Joan H. Lefkow**, *Judge.*

ARGUED JUNE 26, 2025 — DECIDED JULY 22, 2025

Before SCUDDER, ST. EVE, and JACKSON-AKIWUMI, *Circuit Judges*.

ST. EVE, *Circuit Judge*. In 2016, the Village of Schaumburg adopted an ordinance aimed at reducing fire department response times. The ordinance required commercial and multi-family properties to route fire alarm signals directly to a regional emergency-dispatch center. It also upended the market for fire alarm services in the Village.

Several alarm companies sued to enjoin the ordinance, alleging that it violated the Contracts Clause and tortiously interfered with their contracts and prospective economic advantage. Yet at summary judgment, the alarm companies failed to come forward with evidence that the ordinance drove their customers to breach existing contracts or that the Village intended to interfere with their business relationships. Their claims thus fail for lack of proof, and we AFFIRM the district court's entry of summary judgment for the Village.

## I. Background

Increased intergovernmental cooperation and the rise of regional emergency-dispatch centers have prompted consolidation in the market for fire alarm detection services in Illinois. They also have generated a slew of challenges to municipal fire alarm policies. *See, e.g.*, *Alarm Detection Sys., Inc. v. Orland Fire Prot. Dist.*, 929 F.3d 865 (7th Cir. 2019); *ADT Sec. Servs., Inc. v. Lisle-Woodridge Fire Prot. Dist.*, 724 F.3d 854 (7th Cir. 2013). This case presents one such dispute.

### A. Factual Background

Local law requires that all commercial and multifamily properties in the Village of Schaumburg employ automated fire alarm systems. These systems both detect fires and transmit alarm signals to emergency dispatchers, so the Village's fire department can respond quickly.

The National Fire Protection Association, which sets nationwide standards for fire alarm systems, authorizes two primary modes of alarm transmission: the "supervising station" model and the "direct connect" model. Under the supervising station model, alarm signals route from a monitored property to a central station operated by the property's private alarm

company. Signals requiring emergency response are then retransmitted to the appropriate local emergency-dispatch station. Under the aptly named direct connect model, all alarm signals route directly to a receiver at the local dispatcher.

Between 2007 and 2016, the Village of Schaumburg permitted its residents to choose between the two service models. Alarm Detection Systems, Inc., Illinois Alarm Service, Inc., Nitech Fire & Security Industries, Inc., and SMG Security Systems, Inc. (collectively, "the Alarm Companies") all employed the supervising station model and sold their services in the Village. To retransmit alarm signals from their respective supervising stations, the Alarm Companies relied on phone calls to the Village's regional dispatch center, the Northwest Central Dispatch System ("NWCDS").

Then, in 2016, Schaumburg's fire chief recommended that all multifamily and commercial properties in the Village shift to the direct connect model. The fire chief gave three justifications for the change. First, he reasoned that the direct connect model would reduce fire department response times because it would eliminate the need for supervising stations to place phone calls to NWCDS. Second, he explained that a direct connect system would increase the Village's awareness of out-of-service alarm systems because NWCDS would receive "trouble" and "supervisory" signals indicating system outages, not just active alarms. The fire chief's third justification was financial. NWCDS had an exclusive contract with Tyco/Johnson Controls, another fire alarm detection company. If the Village adopted a direct connect model, Tyco would pay NWCDS $23 per month per customer, and NWCDS would credit an equal amount to the Village, saving the Village roughly $300,000 a year.

The Village adopted its fire chief's recommendation and enacted Ordinance No. 16-087 ("the Ordinance"). The Ordinance required that covered properties switch to the direct connect model by the earliest of: (1) when the property's existing contract for alarm services ended, (2) when the property modified or replaced its fire alarm equipment, or (3) August 31, 2019.

The Ordinance dealt a blow to the Alarm Companies' businesses. According to the Alarm Companies, it is impossible for their transmitters to interoperate with Tyco receivers because Tyco receivers use an FCC-licensed radio frequency that Tyco owns. *See Orland Fire Prot. Dist.*, 929 F.3d at 868. So to comply with the Ordinance, Village property owners must contract with Tyco. The Alarm Companies allege that by the end of the Ordinance's implementation period, they had lost 250 customers—all their business in the Village.

The Alarm Companies claim that customers, too, have suffered a blow. They contend that the Ordinance has resulted in more expensive and lower quality alarm services. Where their services had cost Village customers an average of $45 per month, Tyco charged $89 per month following the Ordinance's enactment. The Alarm Companies also allege that the move to a direct connect model has increased the number of out-of-service alarm systems in the Village because private alarm companies no longer receive "trouble" or "supervisory" signals. NWCDS receives those signals now, yet the Alarm Companies and the Village agree that private alarm companies are responsible for remedying them.

**B. Procedural History**

Aggrieved, the Alarm Companies sued. As relevant here, they alleged that the Ordinance violated the Contracts Clause, U.S. Const., art. I, § 10, and that the Village tortiously interfered with their contracts and prospective economic advantage by enacting it.

The district court initially dismissed the Alarm Companies' federal claims pursuant to Federal Rule of Civil Procedure 12(b)(6), and relinquished jurisdiction over their state-law claims. The Alarm Companies appealed, and we reversed in part, holding that they had stated a Contracts Clause claim. *Alarm Detection Sys., Inc. v. Vill. of Schaumburg* (*"Alarm Detection I"*), 930 F.3d 812, 823–24 (7th Cir. 2019). We cautioned, however, that to ultimately prevail, the Alarm Companies would need to show the Ordinance caused their customers to prematurely cancel existing contracts, not just decline to renew them. *See id.*

On remand, the parties filed cross-motions for summary judgment. Rather than offer evidence of premature cancellations, the Alarm Companies relied on allegations from their amended verified complaint to support their claims, such as:

45. … Many Commercial Accounts terminated their Customer Contracts before the end of the existing terms. Other Commercial Accounts terminated their Customer Contracts by August, 2019, even though the terms of such contracts extended beyond that date.

…

107. Some of the Commercial Accounts breached their Customer Contracts shortly after the Challenged Conduct commenced.

108. Other Commercial Accounts breached their Customer Contracts which extended beyond the final implementation date of August 31, 2019.

They also submitted into the record a customer nonrenewal letter, which cited the Ordinance as the sole reason for termination.

The district court granted the Village's motion in a thorough written opinion. It reasoned that the Alarm Companies had offered no admissible evidence substantiating their claim that the Ordinance caused customers to breach contracts with them. And while the Ordinance likely drove customers to cease using the Alarm Companies' services, the uncontested record would not permit a reasonable factfinder to conclude the Village possessed the intent required to sustain a claim of tortious interference with prospective economic advantage.

The Alarm Companies now appeal.

## II. Discussion

We review a district court's summary judgment decision de novo. *ADT Sec. Servs., Inc. v. Lisle-Woodridge Fire Prot. Dist.*, 672 F.3d 492, 498 (7th Cir. 2012). Summary judgment is proper where there are "no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Frazier-Hill v. Chi. Transit Auth.*, 75 F.4th 797, 801 (7th Cir. 2023); Fed. R. Civ. P. 56(a).

### A. Contracts Clause and Tortious Interference with Contract Claims

We begin with the Alarm Companies' claim that the Ordinance interfered with their customer contracts, in violation of the Contracts Clause and state tort law.

The Contracts Clause prohibits the enactment of any law "impairing the Obligation of Contracts." U.S. Const., art. I, § 10. A state or local law offends the Clause where it (1) "operate[s] as a substantial impairment of a contractual relationship," and (2) is not "drawn in an 'appropriate' and 'reasonable' way to advance 'a significant and legitimate public purpose.'" *Sveen v. Melin*, 584 U.S. 811, 819 (2018) (quoting *Energy Reserves Grp., Inc. v. Kan. Power & Light Co.*, 459 U.S. 400, (1983)). Illinois tort law, too, ascribes liability to those who intentionally and unjustifiably interfere with contracts. *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 676 (Ill. 1989); *see also Webb v. Frawley*, 906 F.3d 569, 576 (7th Cir. 2018).

Common to both causes of action is a threshold inquiry: whether the defendant's challenged act caused the infringement of a vested contractual right. Harm to a plaintiff's contingent interests does not suffice. *See Weaver v. Graham*, 450 U.S. 24, 29–30 (1981) ("Evaluating whether a right has vested is important for claims under the Contracts or Due Process Clauses, which solely protect pre-existing entitlements."); *HPI Health Care Servs.*, 545 N.E.2d at 676 (requiring plaintiffs prove the alleged tortfeasor induced the breach of an existing, valid, and enforceable contract).

The Alarm Companies cannot cross this threshold. After our remand in *Alarm Detection I*, they failed to come forward with evidence that the Ordinance drove their customers to breach existing contracts. Instead, the Alarm Companies relied upon allegations from their verified complaint and documentary evidence of customer nonrenewals. Neither of their citations satisfies their burden.

Some—but not all—sworn statements of fact within a verified complaint can serve as evidence at summary judgment. *Jones v. Van Lanen*, 27 F.4th 1280, 1285 (7th Cir. 2022). To do so, however, a sworn statement must possess "the specificity required for a reasonable jury to understand *how*" the affiant reached her factual conclusion. *See Osborn v. JAB Mgmt. Servs., Inc.*, 126 F.4th 1250, 1259 (7th Cir. 2025) (emphasis added). Allegations that are "conclusory as a legal matter" will not demonstrate an issue of material fact and stave off summary judgment. *Foster v. PNC Bank, Nat'l Ass'n*, 52 F.4th 315, 320 (7th Cir. 2022*)*; *see also King v. Ford Motor Co.*, 872 F.3d 833, 840 (7th Cir. 2017) (reminding litigants that "summary judgment is not a time to be coy" (citation modified)).

Recall, to support their summary judgment motion, the Alarm Companies cited statements in their verified complaint attesting that customers breached contracts with them. Yet these statements leave much to the imagination. They do not reveal which customers breached, when they breached, how the companies were notified of the breaches, or the reasons given for the breaches—all information a reasonable jury would need to understand how the Alarm Companies reached their conclusion that breaches occurred. Without any of this basic information, the Alarm Companies' bare allegations are too conclusory to carry their burden at summary judgment.

The Alarm Companies also relied on documentary evidence of customer nonrenewals, but this evidence cannot defeat summary judgment, either. The Alarm Companies never possessed enforceable rights in future contract extensions because their contracts provided that prior to a renewal period's vesting date, customers could cancel at will. *See Cody v. Harris*,

409 F.3d 853, 859 (7th Cir. 2005) (concluding that an at-will contract cannot sustain a tortious interference with contract claim under Illinois law because it constitutes "at most . . . a prospective economic advantage"); *cf. Dodge v. Bd. of Educ. of City of Chi.*, 302 U.S. 74, 80 (1937) (indicating that where a state is "free to alter, amend, and repeal" a statute, the statute does not create vested rights protected by the Contracts Clause). And neither the Contracts Clause nor the tort of intentional interference with contract protects contingent interests.

## B. Tortious Interference with Prospective Economic Advantage Claim

We next examine whether the district court erred when it granted summary judgment for the Village on the Alarm Companies' claim of tortious interference with prospective economic advantage.

To prevail on such a claim, the Alarm Companies must show: (1) they had a reasonable expectancy of entering into a valid business relationship, (2) the Village knew of the expectancy, (3) the Village intentionally and unjustifiably interfered with the expectancy, inducing or causing a breach or termination, and (4) they suffered damage as a result. *Voyles v. Sandia Mortg. Corp.*, 751 N.E.2d 1126, 1133–34 (Ill. 2001). Because the parties dispute only the Village's intent and justifications, we confine our analysis to the third element.

The Illinois Supreme Court has long held that defendants must act with "the purpose of injuring the plaintiff's expectancies" for their conduct to be intentional. *Panter v. Marshall Field & Co.*, 646 F.2d 271, 298 (7th Cir. 1981) (collecting cases); *see also Dowd & Dowd, Ltd. v. Gleason*, 693 N.E.2d 358, 371 (Ill. 1998) (continuing to require "purposeful interference").

The uncontroverted evidence here shows that citizen safety, and perhaps Village finances, motivated the adoption of the Ordinance, not a desire to harm the Alarm Companies' businesses. Indeed, the Alarm Companies all but concede as much. They protest only that if safety is the Village's goal, the Ordinance is poorly crafted. This line of argument cannot save their claim. The tort of interference with prospective economic advantage does not countenance judicial review of the *wisdom* of the Village's policy choice. The proper forum for that debate is a Village Board meeting or a local election, not a federal court.

\*       \*       \*

The judgment of the district court is

AFFIRMED.